[No. 19608–1–I. Division One. January 17, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY LOUIS BUTLER, *Appellant*.

*Marc R. Lampson* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Paul Stern* and *Seth Aaron Fine, Deputies,* for respondent.

COLEMAN, C.J.—Gregory Butler appeals his conviction for second degree assault, claiming that the trial court erred in admitting the victim's hearsay statement as an excited utterance. Butler also challenges his sentence.

The assault occurred in May 1985 while Butler was looking after 2½–year–old T, the son of his girl friend, Rochelle Reed. T's mother had been living with Butler for several months. She testified that her son referred to Butler as "Daddy."

An acquaintance, Gina Mitchell, occasionally baby–sat for Butler during the time T's mother was out of town. On May 1, 1985, Butler left T with Gina Mitchell. Gina testified that T had complained of a sore wrist when she tried to take his coat off and that he "jumped and kind of screamed a little bit . . ." She further testified, without objection from counsel, that T had told her, "My daddy hurt my arm."

On May 8, 1985, Gina Mitchell's husband was with Butler and T until approximately 4:30 p.m. Mr. Mitchell testified that at that time T looked "perfect" and had no bruises. Later that evening, Butler left T with Gina while he went to work with Mr. Mitchell.

Gina testified regarding T's appearance when Butler dropped him off: "I use the example of the Elephant Man. He was, one eye was swollen completely, the side of his head right here looked like it was mashed in, his face was bulging in certain areas, his forehead was drooped down

over his nose. He looked really awful." Gina took T to Children's Hospital at approximately 8 p.m.

Following his admission into the hospital, T told Nurse Danikas, who had been caring for him, that his daddy had thrown him off the bunk bed and kicked him. Butler testified that T had told him on the morning of May 8 that he had fallen out of his bunk bed. Dr. Feldman testified that it was his opinion that T's injuries could not have been caused by a fall from his bunk bed.

On September 25, 1986, Butler was convicted, as charged, of second degree assault. On November 7, 1986, the court sentenced Butler to 48 months. It is from this judgment and sentence that Butler appeals.

We first address appellant's contention that T's statement to Danikas should not have been admitted through her testimony as an exception to the hearsay rule.[1]

Danikas testified that she was working at Children's Hospital on May 9 between 3 and 11:30 p.m. She further testified that T was one of her patients and that T had told her what had happened to him.[2] Butler argued at the pretrial hearing that Danikas should not have been allowed to testify as to what T had told her because it was inadmissible hearsay. The State argued at the pretrial hearing that the statement was admissible as statements for the purpose of medical diagnosis and treatment. The court did not address this ground and instead admitted the statement as an excited utterance.

The State concedes that the trial court erred in admitting the statement as an excited utterance. However, it argues that Danikas' identification testimony was admissible under ER 803(a)(4), statements made for purposes of medical diagnosis or treatment.

---

[1] Appellant objected to Danikas' testimony that T had told her that "his daddy threw him off the bed and kicked him."

[2] At a pretrial hearing, the court ruled that T was incompetent to testify.

■ We may consider the State's argument because the trial court's admission of evidence on an incorrect basis does not constitute error if a proper basis exists for admitting the evidence even though that was not the basis relied upon by the trial court. *State v. Bowen,* 48 Wn. App. 187, 194, 738 P.2d 316 (1987).

ER 803(a)(4) allows admission of

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

"The exception applies only to statements 'reasonably pertinent to diagnosis or treatment.' Thus, statements as to causation ('I was hit by a car') would normally be allowed, but statements as to fault ('. . . which ran a red light') would not." 5A K. Tegland, Wash. Prac. § 367, at 224 (2d ed. 1982). Tegland points out that there are some instances where it is necessary to delete the inadmissible portion and admit the rest. 5A K. Tegland, Wash. Prac. § 367, at 89 (Supp. 1988).

However, Tegland also points out that "[a]s a practical matter, it may be difficult to separate statements of causation from statements attributing fault, especially if the declarant is a child." 5A K. Tegland, Wash. Prac. § 367, at 89 (Supp. 1988). In this situation, courts tend to admit the evidence. The following Washington cases are illustrative.

In *State v. Bouchard,* 31 Wn. App. 381, 382, 639 P.2d 761, *review denied,* 97 Wn.2d 1021 (1982), Bouchard was convicted of indecent liberties with his 3–year–old granddaughter. The child suffered a perforated hymen. The incident occurred when the child was visiting her grandparents. *Bouchard,* at 382. When the child returned home, her mother noticed blood on her daughter's body. Her mother testified that when she questioned her daughter, she told

her mother that "grandpa did it."[3] The attending physicians also testified that the child made similar statements to them. *Bouchard,* at 383.

Bouchard argued on appeal that the child's statements to the physicians were inadmissible hearsay.[4] *Bouchard,* at 383. Without analysis, the court held that "[t]he statements to the attending doctors are clearly admissible under ER 803(a)(4) as statements 'of the cause or external source' of the injury and as necessary to proper treatment." *Bouchard,* at 384.

In *State v. Robinson,* 44 Wn. App. 611, 722 P.2d 1379, *review denied,* 107 Wn.2d 1009 (1986), the facts were very similar. Robinson was found guilty of indecent liberties with a 3–year–old girl. *Robinson,* at 615. Robinson argued on appeal that admission of the child's statements made to the nurse and doctor at the hospital where she was treated were inadmissible hearsay. *Robinson,* at 615. The statements to the nurse and doctor identified Robinson as the abuser. The court disposed of Robinson's argument in a footnote by holding that "[t]he statements to Nurse Billings and Dr. Kania are also admissible as statements made for purposes of diagnosis and treatment. ER 803(a)(4)." *Robinson,* at 616 n.1.

In the present case, as in *Bouchard* and *Robinson,* the statements made by T to Nurse Danikas were necessary to determine the cause or external source of the injury. Here, T was brought to the hospital by Gina Mitchell, his babysitter, who only knew what T had told her—"Daddy hurt

---

[3]"Defendant contended that his granddaughter was sitting on the arm of his reclining chair when she fell on the metal bar which connected the chair to the foot rest and suffered the injury. A doctor said that was 'not anatomically possible.'" *Bouchard,* at 382–83.

[4]Bouchard also argued that the statements to the child's mother were inadmissible hearsay. However, the court held that "[e]xcited utterances in response to a parent's questions are sanctioned in sex offense cases where the spontaneity of the statement is clear and the danger of fabrication remote." (Citations omitted.) *Bouchard,* at 384.

me." Hospital staff received a conflicting report that T had fallen from a bunk bed 4½ feet high.

Dr. Feldman testified that he is consulted by the hospital staff on the more serious suspected child abuse cases.[5] He confirmed that he was consulted in this case. Dr. Feldman explained that he attempts to get a history from the child because it plays a major part in his determination as to whether the child's injury was accidental or intentional. Dr. Feldman further testified that the children usually are quite honest about what they say. He went on to explain that in order to determine if injuries are caused by abuse, the basic consideration is whether the history adequately explains the injury. Therefore, under this reasoning, as in *Bouchard* and *Robinson,* T's statements would be admissible under ER 803(a)(4).

This approach to child hearsay in the context of ER 803(a)(4) was further refined in *United States v. Renville,* 779 F.2d 430 (8th Cir. 1985). Renville was convicted by a jury of two counts of sexual abuse of his 11–year–old stepdaughter. *Renville,* at 431. Renville argued on appeal that the trial court erred by permitting a physician to testify to statements by the victim during his examination identifying Renville as her abuser. *Renville,* at 435. Specifically, Renville argued that the hearsay exception found in Fed. R. Evid. 803(4) did not encompass statements of fault or identity made to medical personnel.[6] *Renville,* at 435–36.

The *Renville* court pointed out that the crucial question under the rule was whether the out–of–court statement of the declarant was "'reasonably pertinent'" to diagnosis or

---

[5]Dr. Feldman is the medical consultant for child abuse and a member of the Child Abuse and Neglect Committee at Children's Hospital.

[6]Fed. R. Evid. 803(4) is identical to Washington's ER 803(a)(4) and allows admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

treatment. *Renville,* at 436. The court began its analysis by stating the 2–part test for the admissibility of hearsay statements under Fed. R. Evid. 803(4) that the court set forth in *United States v. Iron Shell,* 633 F.2d 77 (8th Cir. 1980), *cert. denied,* 450 U.S. 1001, 68 L. Ed. 2d 203, 101 S. Ct. 1709 (1981).

"[F]irst, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Renville,* at 436.

> The test reflects the twin policy justifications advanced to support the rule. First, it is assumed that a patient has a strong motive to speak truthfully and accurately because the treatment or diagnosis will depend in part upon the information conveyed. The declarant's motive thus provides a sufficient guarantee of trustworthiness to permit an exception to the hearsay rule. *Iron Shell,* 633 F.2d at 84. Second, we have recognized that "a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription." [*Roberts v. Hollocher,* 664 F.2d 200, 204 (8th Cir. 1981)] (quoting 4 J. Weinstein & M. Berger, *Weinstein's Evidence* § 803(4)[01], at 803–129 (1979)). *Cf.* Fed.R.Evid. 703 (facts of a type reasonably relied on by experts in a particular field to form an opinion are admissible).

The *Renville* court reiterated that the general rule, as illustrated in the advisory committee notes to Fed. R. Evid. 803(4) and as the court held in *Iron Shell,* is still "that a declarant's statements relating the identity of the individual allegedly responsible for his injuries or condition 'would seldom, if ever,' be reasonably pertinent to treatment or diagnosis." *Renville,* at 436.

■ However, the court noted that the court in *Iron Shell* and the advisory committee used words of generality, not exclusion. *Renville,* at 436. The court stated that the facts in *Renville* did not fit the general rule. Rather, the court held that the general rule does not apply in instances such as *Renville* where the statement made by the child

abuse victim identified the abuser as a member of the victim's immediate household. The court stated that his situation presented a sufficiently different case from that envisaged by the drafters of rule 803(4). *Renville,* at 436.

The court held that "[s]tatements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment." *Renville,* at 436. The court reasoned that statements of this kind were different from the statements of fault identified by the Rules Advisory Committee in a crucial way: "they are reasonably relied on by a physician in treatment or diagnosis." *Renville,* at 437.

The court noted that the general rule is premised on the assumption that the injury is purely somatic. However, child abuse involves more than just physical injury; "the physician must be attentive to treating the emotional and psychological injuries . . ." which accompany child abuse. *Renville,* at 437. Moreover, where the abuser is a member of the victim's immediate household, the statement of fault is relevant to the prevention of recurrence of injury. *Renville,* at 437.

The court next pointed out that "physicians have an obligation, imposed by state law, to prevent an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse." (Footnote omitted.) *Renville,* at 438.

Thus, the court concluded that the second part of the test had been met in that statements of identity to a physician by a child abused by a family member are of a type "physicians reasonably rely on in composing a diagnosis and course of treatment." *Renville,* at 438. The court also concluded that the first part of the test had been satisfied. In instances where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment and the victim manifests such an understanding, "the victim's motivation to speak truthfully is the same as that which insures reliability when he

recounts the chronology of events or details symptoms of somatic distress." *Renville,* at 438.

The court found that these circumstances were satisfied because before questioning the child, the physician explained to her that the examination and his questions were necessary to obtain information to treat her. *Renville,* at 438. The court concluded that there were sufficient indicia of the declarant's proper motivation to ensure the trustworthiness of her statements to the testifying physician. *Renville,* at 439. The court held that the trial court did not abuse its discretion in admitting the victim's statements to the treating physician identifying her abuser. *Renville,* at 439.

The facts before us are nearly identical to those in *Renville.* Here, as in *Renville,* the statements that were objected to were made by an abused child and the statements identified the abuser as a member of the child's immediate household. Also, as in *Renville,* the possibility exists that there is more than just severe physical abuse; the treating physician must be attentive to treating the emotional and psychological injuries which accompany child abuse. The child victim's statement of fault is also relevant to the prevention of recurrence of injury.

Moreover, Washington legislative enactments impose a duty on physicians and registered or licensed nurses who "[have] reasonable cause to believe that a child . . . has suffered abuse or neglect" to "report such incident, or cause a report to be made, to the proper law enforcement agency . . ." RCW 26.44.030(1). If a physician's report indicates that the child's safety would be seriously endangered if returned home, the State Department of Social and Health Services "shall file a dependency petition . . ." RCW 26.44.030(7).

In this case we acknowledge that the test guaranteeing trustworthiness is not satisfied solely by the *Renville* rationale. In *Renville,* the victim was 11 years old. Here the victim was only 2½ years old and therefore may not have

understood the necessity of the physician's and nurse's inquiries. On the other hand, this concern is reduced by the fact that a child of T's age would normally have no reason to fabricate the cause of his injury. More importantly, however, there is corroborating evidence supporting T's statement which provides further guaranties of trustworthiness.

Here, Gina Mitchell testified, without objection, as to what T had told her had caused his injuries. She testified that T had told her, "My daddy hurt my arm." Several photos of T's injuries were admitted. The hospital's medical reports also went to the jury. One report contained T's statement that "Daddy hurt me" and the assessment that child abuse was probable. Moreover, appellant's contention that T fell out of his bunk bed is implausible. Dr. Feldman testified that it was his opinion that T's injuries "definitely had an appearance of inflicted injury, that they were the results of some trauma that was administered to the child, rather than an accident." Considering the particular facts of this case, we hold that T's statement to Nurse Danikas was properly admitted.[7]

We further note that the comments to ER 803 state that "Flexibility in construction of the rules so as to promote growth and development of the law of evidence is called for by rule 102. Under this mandate there will be room to construe an existing hearsay exception broadly in the interest of ascertaining truth . . ." Comment, ER 803, 91 Wn.2d 1168 (1979).

---

[7]In *Goldade v. State,* 674 P.2d 721, 722 (Wyo. 1983), *cert. denied,* 467 U.S. 1253 (1984), the court reached the same conclusion in a case with facts nearly identical to ours. *See also Evidence–Hearsay–Child Abuse and Neglect–A Child's Statements Naming an Abuser Are Admissible Under the Medical Diagnosis or Treatment Exception to the Hearsay Rule,* 53 U. Cin. L. Rev. 1155, 1161 (1984), which points out that the Ninth Circuit in an unpublished opinion, United States v. Rhodes, 11 Fed. R. Evid. Serv. (Callaghan) 1520 (9th Cir. 1982), upheld the admission of a 3–year–old child's statement to a nurse that her mother had hit her. The court concluded that the record adequately supported a finding that the child's statement was necessary for diagnostic purposes. U. Cin. L. Rev. at 1161–62.

We next address appellant's contention that the court abused its discretion by imposing an exceptional sentence for second degree assault.

The presumptive sentence range for this crime is determined by combining the seriousness level of second degree assault with appellant's criminal history. RCW 9.94A.310, .320. Appellant has a criminal history score of 3 for two prior burglary convictions (first and second degree) and promoting prostitution (second degree). Thus, his presumptive sentence range is 13 to 17 months. The statutory maximum sentence for second degree assault is 10 years. Former RCW 9A.36.020(2); RCW 9A.20.021(1)(b). The prosecutor asked for a sentence of 60 months; however, the trial judge sentenced appellant to 48 months.

The trial court may impose a sentence outside the standard range if it finds that there are "substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). Whenever an exceptional sentence is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A-.120(3).

In the present case, the trial court gave the following reasons for imposing an exceptional sentence:

1. The defendant knew the victim of the offense was particularly vulnerable and incapable of resistance due to extreme youth.
2. The offense was a series of offenses because it involved multiple incidents upon the victim.
3. The injuries inflicted were of a very substantial nature and were very severe.
4. The injuries to the victim could have been avoided by affirmative actions by the defendant by removing himself from the situation.

Our task is to determine if these reasons justify a sentence outside the presumptive sentence range.

In reviewing an exceptional sentence, this court must first determine whether the trial court's reasons are supported by the record. RCW 9.94A.210(4)(a); [*State v.*]

*McAlpin,* 108 Wn.2d [458,] 462 [740 P.2d 824 (1987)]; [*State v.*] *Nordby,* 106 Wn.2d [514,] 517[–18, 723 P.2d 1117 (1986)]. . . . Second, the reviewing court must independently determine whether, as a matter of law, the trial court's reasons justify an exceptional sentence. RCW 9.94A.210(4)(a); *McAlpin,* 108 Wn.2d at 463; *Nordby,* 106 Wn.2d at 518. The reasons given must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense. *McAlpin,* 108 Wn.2d at 463; *Nordby,* 106 Wn.2d at 518.

(Footnote omitted.) *State v. Tunell,* 51 Wn. App. 274, 278, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988).

The parties both agree that the trial court's finding that the defendant knew the victim was particularly vulnerable is proper justification for an exceptional sentence. This reason is specifically listed as an "aggravating circumstance" under RCW 9.94A.390(2)(b): "The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health."

The court's second reason will be discussed *infra.*

The trial court's third reason is insufficient. The fact that the injuries appellant inflicted upon T were of a very substantial and serious nature merely brings appellant's crime within the definition of second degree assault. *State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 1111 (1986).

A person is guilty of second degree assault when he knowingly inflicts "grievous bodily harm" upon another. Former RCW 9A.36.020(1)(b). "'By "grievous" is meant atrocious, aggravating, harmful, painful, hard to bear, serious in nature.'" *State v. Salinas,* 87 Wn.2d 112, 121, 549 P.2d 712 (1976) (quoting instruction 11). This definition encompasses the injuries appellant inflicted upon T. Hence, the nature of the injuries inflicted were already accounted for in determining the presumptive sentence range for second degree assault, and they cannot be counted a second time to justify an exceptional sentence. *Armstrong,* at 551.

Appellant contends, and the State concedes, that the trial court's fourth reason, the fact that injuries to the victim could have been avoided, is inadequate as a reason justifying an exceptional sentence because this will be true for any crime. *Armstrong,* at 551.

We now address appellant's contention that the trial court's second reason, *i.e.,* that the offense was a series of offenses because it involved multiple incidents upon the victim, is not a sufficient aggravating factor because it punishes Butler for uncharged, unproven crimes.

█ Multiple incidents per victim is not among the aggravating circumstances listed in RCW 9.94A.390. RCW 9.94A.390(2)(c)(i) does list "multiple incidents per victim" as an aggravating circumstance, but only in the context of major economic offenses. That list, however, is illustrative rather than exclusive. The *Armstrong* court specifically held that "the infliction of multiple injuries in the course of a second degree assault is a factor upon which a court may rely to justify an exceptional sentence." *Armstrong,* at 550.

In *Armstrong,* the defendant inflicted multiple injuries when he threw boiling coffee on the child and later plunged the child's foot into the coffee. The *Armstrong* court held that the infliction of these multiple injuries justified imposing an exceptional sentence. *Armstrong,* at 550.

Our Supreme Court followed the *Armstrong* multiple incidents per victim analysis in *State v. Dunaway,* 109 Wn.2d 207, 219, 743 P.2d 1237, 749 P.2d 160 (1987) to justify the defendant's exceptional sentence. In *Dunaway* the defendant shot the victim, partially left the room, and then returned to shoot him again, "thereby inflicting multiple injuries during the course of attempting first degree murder." *Dunaway,* at 219.

Likewise, in this case T was not kicked once but several time, causing severe injuries around his head and face. Thus, multiple injuries were inflicted upon the victim.

Consequently, the trial court's second reason is proper justification for an exceptional sentence.

██ In summary, we conclude that while some of the reasons given by the trial court were inadequate grounds for an exceptional sentence,[8] the fact that multiple injuries were inflicted upon T and that T was particularly vulnerable due to extreme youth, were substantial and compelling reasons justifying appellant's sentence. Considering these facts alone, it was not an abuse of discretion to impose an exceptional sentence. *See State v. Fisher,* 108 Wn.2d 419, 429, 739 P.2d 683 (1987) (court upheld exceptional sentence where trial court's only valid reason out of four was that the victim was particularly vulnerable due to extreme youth).

We do not accept appellant's argument that 48 months is excessive. A sentence will be reversed as "clearly excessive" only if the trial court's action was one that "no reasonable person would have taken." *Armstrong,* at 552. In this case, the sentence imposed does not appear to be "clearly excessive" in light of the two substantial and compelling reasons which justify it.

---

[8]In oral remarks during the sentencing proceeding, the trial court included within its reasons justifying an exceptional sentence the fact that T was "injured many times over a period of at least a week." To the extent that the trial court relied upon this factor to impose an exceptional sentence, such reliance was improper. This factor is broader than *Armstrong's* interpretation of multiple incidents. It would be inappropriate to impose a sentence outside the presumptive range where the multiple injuries per victim did not arise out of the same incident or period of time. The record establishes, however, that the primary assault occurred when T was thrown from his bunk bed and kicked several times, causing severe multiple injuries. The only other incident, a broken arm, occurred sometime during the prior week, which in comparison to the injuries inflicted when T was thrown from his bed was insignificant. In arriving at its sentencing decision, it is clear that the trial court placed substantial weight on T's vulnerability and the assault which occurred when T was thrown from his bed. Therefore, it is unnecessary to remand for resentencing because, in light of the weight accorded to the valid factors, we are satisfied that the trial court would impose the same sentence on remand. *See State v. Fisher,* 108 Wn.2d 419, 430 n.7, 739 P.2d 683 (1987).

The judgment and sentence is affirmed.

SCHOLFIELD and GROSSE, JJ., concur.

Review denied at 112 Wn.2d 1014 (1989).