[Nos. 31290-1-I; 31291-0-I.   Division One.   October 31, 1994.]
31292-8-I; 31293-6-I.

*In the Matter of the Dependency of* M.P., ET AL.

D.P., *Appellant*, v. THE DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, *Respondent.*

*Catherine Lynn Floit* of *Washington Appellate Defender Association,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Delores A. Peterson* and *Charlotte E. Clark-Mahoney, Assistants,* for respondent.

BECKER, J. — D.P., a divorced father of four young children, appeals from an order determining that his children

are dependent and an order limiting his contact with the children. We affirm, concluding that substantial evidence supports the orders and that the trial court did not err in its rulings admitting child hearsay and opinion testimony.

## I

In June 1990, the mother left the family home with the children and stayed for a week in a domestic violence shelter. Three months later, she filed for divorce from the father, her husband of 6 years. The divorce, which became final in August 1991, allowed the father unsupervised visitation.[1] In that same month, the State petitioned for dependency as to all the children. At this time the children — D, a boy, and J, S, and M, three girls — were aged 5, 4, 2, and 3 months, respectively.

The dependency petition alleged, among other things, that the mother told the Child Protective Services social worker the father had raped the mother a year before and that their daughter, J, had witnessed the rape; that the mother saw blood in J's panties a year before that, in 1989, and was concerned the father might have sexually abused J; and that the mother said the father had physically abused the three oldest children.

At the fact-finding hearing, the mother testified that the marriage had been troubled by the father's anger, his controlling behavior, and his physical and emotional abuse of her, which in turn affected the children. Counselors generally agreed the mother was unassertive, dependent on her husband, and afraid of his disapproval. Evidence showed this pattern continued after the couple separated. The court heard evidence of conduct by the father that was abusive toward the children. In addition, a counselor testified about J's statements indicating that J was afraid of the father and that the father had molested her.

---

[1] The mother signed the divorce decree, apparently against her attorney's previous advice, when the father brought contempt charges against her for not allowing him visitation.

## II

### DEPENDENCY DETERMINATION

■ The State is required to prove dependency by a preponderance of the evidence. *In re J.K.*, 49 Wn. App. 670, 673-74, 745 P.2d 1304 (1987), *review denied*, 110 Wn.2d 1009 (1988); RCW 13.34.130.

The court made a determination of dependency applying to all four children under the statute defining a dependent child as one:

> Who has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development[.]

Former RCW 13.34.030(2)(c).

The court made a determination of dependency specific to J under the statute defining a dependent child as one:

> Who is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child[.]

Former RCW 13.34.030(2)(b).[2]

■ To evaluate the father's claim of insufficient evidence of dependency, we determine whether substantial evidence supports the court's findings of fact and whether the findings support the conclusions of law. *In re S.S.*, 61 Wn. App. 488, 504, 814 P.2d 204, *review denied*, 117 Wn.2d 1011 (1991). In a dependency proceeding, evidence is substantial if, when

---

[2]The definition of abused or neglected at the time of the fact-finding hearing read:

" 'Child abuse or neglect' shall mean the injury, sexual abuse, sexual exploitation, or negligent treatment or maltreatment of a child by any person under circumstances which indicate that the child's health, welfare, and safety is harmed thereby. An abused child is a child who has been subjected to child abuse or neglect as defined herein: PROVIDED, That this subsection shall not be construed to authorize interference with child-raising practices, including reasonable parental discipline, which are not proved to be injurious to the child's health, welfare, and safety: AND PROVIDED FURTHER, That nothing in this section shall be used to prohibit the reasonable use of corporal punishment as a means of discipline." Former RCW 26.44.020(12) (before 1993 amendment).

" 'Negligent treatment or maltreatment' means an act or omission which evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to the child's health, welfare, and safety." RCW 26.44.020(16).

viewed in the light most favorable to the party prevailing below, it is such that a rational trier of fact could find the fact in question by a preponderance of the evidence. *See In re C.B.*, 61 Wn. App. 280, 285-86, 810 P.2d 518 (1991). This court is not to weigh the evidence or the credibility of witnesses. *In re Sego*, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973).

### Admissibility of Evidence of Sexual Abuse Under Medical Diagnosis or Treatment Exception to Hearsay

The trial court found significant an event that occurred during a church camping trip shortly after the couple separated. J (then 3 years old) was next to her mother in the tent when the father began sexual advances on the mother. The mother begged him to stop when J woke up and started to cry. The father pinned the mother's hands to her side, told J to go back to sleep, and had intercourse with the mother.

The father contends that the court erred in admitting J's subsequent disclosures to Carol Lee Smith, her therapist, under ER 803(a)(4),[3] the medical diagnosis or treatment exception to hearsay.

During the first counseling session, J (then 4 years old) told Smith that on the camping trip, Daddy got on top of Mommy and would not stop. J also said during her last visit with her father she could not sleep because he bothered her the whole time. During the next session, J portrayed the incident in the tent using dolls, at Smith's request. Smith then reminded J that she had said the last time she was with her father she could not sleep and asked J to show her what happened. Smith said J put the dad doll face down on the [J] doll and made a "masturbating motion" with her hand. Smith asked J what happened next. J said she could not hear; she put the head of the dad doll close to the ear of

---

[3]ER 803(a)(4) provides that the following are not excluded from hearsay even though the declarant is available: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

the J doll and explained the dad doll was making a lot of noise.

During a later session, Smith and J were playing a game involving drawing cards that requested an action or response. J drew a card that said "tell about a time when your feelings were hurt." Smith said J responded:

> when daddy jumped on my tummy like I told you last time. He went like this . . . and she immediately turned over, extended her legs out, face down . . . and getting into a push-up position . . . ..

J referred to this incident often during her therapy, and also to being frightened of her father. J told Smith when she came home, she looked in the closet to make sure her father was not hiding there.

This evidence and findings based on it were the foundation both for the dependency determination as to J and the limited contact order.

■ The father first contends ER 803(a)(4) does not apply because Smith is a sexual abuse therapist, not a medical doctor. He cites *State v. Black*, 109 Wn.2d 336, 347, 745 P.2d 12 (1987), for the view that a history given by a patient to a rape counselor (and by extension, a sexual abuse therapist) need not be accurate in order to facilitate treatment. This observation in *Black*, while pertinent to *Black's* holding against the admissibility of rape trauma syndrome evidence, does not compel the conclusion that a history given by such a patient is necessarily unreliable and hence inadmissible under ER 803(a)(4). The medical diagnosis or treatment exception to the hearsay rule does not require that the provider of treatment be a forensic specialist with expertise in factfinding.

■ Nor is ER 803(a)(4) limited to physical ailments or to physicians. For example, *In re S.S., supra*, applies the exception to an evaluation by a social worker. 61 Wn. App. at 491, 503. Those who treat child abuse must be attentive to emotional and psychological injuries as well as physical harm. *State v. Butler*, 53 Wn. App. 214, 221, 766 P.2d 505, *review denied*, 112 Wn.2d 1014 (1989). We cannot conclude that

therapy for sexual abuse, as an exercise in healing, differs materially from other medical treatment for the purposes of ER 803(a)(4).

The father next argues that J's statements to Smith were unreliable and insufficiently corroborated. He suggests J's statements are more plausibly understood as her description of what she saw happen to her mother rather than as a reliable statement that it happened to her.

Courts have used a 2-part test to determine whether statements proposed for admission under ER 803(a)(4) are reliable. The declarant's motive in making the statement must be consistent with the purposes of promoting treatment, and the content of the statement must be of the kind reasonably relied on by the person providing the treatment or diagnosis. *In re S.S.*, 61 Wn. App. at 502; *Butler*, 53 Wn. App. at 220. The motivation prong is at issue here.

Some courts appear to be troubled by a presumption that a child victim is unable to understand the need for treatment and therefore cannot have a motive consistent with the purposes of promoting treatment. The father cites, *inter alia, Cassidy v. State*, 74 Md. App. 1, 536 A.2d 666, *cert. denied*, 312 Md. 602 (1988), in which the court said that a "purposeful motivation to describe accurately arising out of concerned self-interest" is absent in young children. *Cassidy*, 74 Md. App. at 30. Similarly, in *State v. Boston*, 46 Ohio St. 3d 108, 122, 545 N.E.2d 1220, 1234 (1989), the court wondered how other courts could consider children of tender years to be describing symptoms or complaints to assist a medical professional in diagnosis or treatment, when "we really know" that it is more likely "the child does not even want to be seeing the doctor!" Courts "really know" nothing of the kind. We see no sound basis for presuming young children lack the ability to understand that certain statements they might make are for the purpose of getting help for sickness, pain, or emotional discomfort. *See Morgan v. Foretich*, 846 F.2d 941, 948-50 (4th Cir. 1988). The proponent of a statement made by a child to a doctor or therapist

should not have to overcome such a presumption in showing that the motivation factor is satisfied.

In this case Smith initially explained to J that she was being seen because her mother was concerned about her being unhappy. J volunteered an account of what had happened to her mother in the tent, and then gave a separate account of what her father had done to her. J told Smith it was "more better" now that she visited her dad only by telephone. In the sessions that followed, she gave consistent, specific responses to Smith's nonleading reminders of her initial disclosures. She returned often to the topic of her fear of her father and she explained how she was going to lock her door to keep him out of the room. Smith, trained to assess the reliability of children's statements, saw no indication of coaching or fabrication, and observed that J "really uses her time well when she comes into therapy". From this, the trial court could reasonably conclude that J understood the purpose of her meetings with Smith well enough to appreciate Smith was there to help her deal with the fears caused by her father's contacts with her. Admitting the statement was proper under the circumstances.

Even if J's motivation to get help were insufficiently established, our courts do not strictly require demonstration of a purposeful motive in the case of a child victim. Statements admitted under ER 803(a)(4) in a dependency proceeding can be viewed as reliable if: (1) the young child "would normally have no reason to fabricate the cause of his injury", and (2) corroborating evidence is available to provide further guaranties of trustworthiness.[4] *Butler*, 53 Wn. App. at 223; *see also State v. Ashcraft*, 71 Wn. App. 444, 457-58, 859 P.2d 60 (1993); *In re S.S.*, 61 Wn. App. at 503.

The evidence corroborating J's verbal disclosures included her demonstration of how her father jumped on her, her unusual focus on genital areas when a Child Protective Ser-

---

[4]*But see Idaho v. Wright*, 497 U.S. 805, 826, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990) (in criminal case, admission of 2$^{1}$/$_{2}$-year-old sexual abuse victim's hearsay statements to examining pediatrician under Idaho's residual hearsay exception violated confrontation clause of Sixth Amendment because of lack of " 'particularized guaranties of trustworthiness' ").

vices social worker gave her maps of female and male bodies to color on, as well as incidents of genital touching with her sisters and brother following visits with the father.

While J's behavior was not as heavily sexualized as the conduct reported in *In re S.S.*, it was sufficient to corroborate her statements to Smith, and it was unlikely she would fabricate a story about her father's sexual molestation to explain why she feared him. Under *Butler*, these circumstances establish the reliability of a child's statement sufficiently to permit admission under ER 803(a)(4).

As shown by the findings of fact, the trial court was fully aware that J made her statements close in time to the dissolution proceedings between her parents. The medical diagnosis or treatment exception does not require special scrutiny for statements made in this context.

The trial court's disposition order and its findings of fact, conclusions of law and dependency order are affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

COLEMAN and WEBSTER, JJ., concur.

Review denied at 126 Wn.2d 1012 (1995).