# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN RE THE DEPENDENCY OF S.N., Minor, | ) ) ) | NO. 71769-3-I |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) ) | DIVISION ONE |
| Respondents, | ) ) | |
| v. | ) ) | |
| DEXTER NANCE, JR., | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: <u>November 10, 2014</u> |

SPEARMAN, C.J. — Dexter Nance, Jr. appeals from the superior court's finding that his daughter is dependent, claiming he received ineffective assistance of counsel. Because he fails to demonstrate prejudice resulting from his counsel's failure to object to hearsay testimony, we disagree and affirm.

## FACTS

Dexter Nance and Sharron Smith have a daughter S.N., born November 23, 2012. In June 2013, Nance and Smith were staying in a motel with S.N. and Smith's five year old son, L.M. Nance had a previous relationship with Monique Stallings and is the father of her two children. After her children spent a weekend with Nance at the motel, Stallings called Child Protective Services (CPS). Following an investigation, the Department of Social and Health Services (DSHS) filed a dependency petition and removed S.N. and L.M. from Smith's and Nance's care in September 2013.

At the dependency fact finding hearing in February 2014, CPS social worker Alexander Blackwell testified about Stallings's referral regarding the weekend her children spent with Nance at the motel. Stallings reported to Blackwell that her children were not properly supervised, they were at times left watching a small child, they had to sleep on the floor of a dirty room, and the adults were smoking and drinking. Blackwell testified that Stallings told him that Smith and S.N. were also at the motel with Nance when her children were with him.

Regarding his interview with Stallings's daughter, Blackwell testified that

she related to me everything that's in my notes, the fact that she was scared being there, that they were left watching the little baby, [S.N.]. They couldn't give me, you know, hours-wise but it sounds like at least a couple hours that they were not supervised. That the child had fallen off the bed at one point while they were watching the child and was crying and left [Stalling's daughter] up to kind of take care of the child while the parents were gone or adults were gone. And then she also talked about her brother getting hit as well.

Verbatim Report of Proceedings (VRP) (2/25/14) at 55.

Blackwell testified that he attempted to investigate whether Nance had neglected or abused Stallings's two children. But Blackwell ultimately closed the case as "unable to investigate," after his attempts to reach Nance were unsuccessful. VRP (2/25/14) at 58.

CPS social worker Heidi Stull investigated Stallings's referral with regard to S.N. and L.M. On June 27, 3013, when Stull met with Nance and Smith at the motel room where they were staying, she noticed the room was cluttered and she could smell marijuana. Nance and Smith told her the smell was coming down through the vents from upstairs. They told her they were homeless and staying in motels while looking for shelters or other places to stay. According to Stull, Nance admitted to suffering from

various mental health problems and indicated that he would like anger management treatment. Stull also testified that at one of her meetings with Nance, he admitted to smoking marijuana because it calms him down.

Stull testified that she asked Nance and Smith about the report of S.N. falling and hitting her head and the children being left alone in the motel room. Nance said he was present when S.N. fell off the bed and reported that he had called the fire department to check her. He also said he asked his cousin in the motel room next door to watch the kids while he went to get some food. Stull was not able to verify the cousin's identity or location.

Stull testified that she received a referral from the Seattle Police on August 6, 2013. Nance had called 911 and reported being assaulted by his child's mother. Officers responding to the call found Nance, who appeared to be intoxicated and admitted to drinking, alone with S.N. Although Stull was not clear on the details, she believed the police arrested Nance after a family member took S.N. When Stull confronted him, Nance did not admit or deny being intoxicated, but denied the report, claiming the police lied and did not take him seriously.

After reviewing police reports and Nance's and Smith's criminal histories, Stull filed dependency petitions for S.N. and L.M. She explained that her decision was based on concerns about Nance's domestic violence history and admitted mental health and substance abuse problems, Smith's criminal history and willingness to leave her children alone in motel rooms or with Nance despite knowing of his mental health issues, and the fact that the motels where they stayed were located in high-crime areas.

Stull testified that when she went with police officers to take the children into protective custody, she found S.N. alone on the bed. Smith returned shortly thereafter and explained that she was doing laundry and paying her bill.

Nance testified that he visited S.N. at least four times in addition to Christmas, but he did not visit between October and Christmas 2013 because he sustained a serious stab wound. Nance was staying in shelters and was not employed at the time of the hearing but he was receiving certain disability benefits and appealing a denial of other benefits. He also claimed that his mental health history was related to his past drug and alcohol abuse and that he misspoke when he admitted to Stull that he needed help with anger management. He also claimed that he didn't "have a problem" with domestic violence but had been "a fighting alcoholic." VRP (2/26/14) at 219. Nance claimed he had completed alcohol treatment in July 2012 and had not relapsed although he may have had "some wine." VRP (2/26/14) at 220.

Nance testified that Stallings had unfairly accused him of things a lot of times and that he explained his problems with her to Stull. Nance claimed that he was present when S.N. had fallen from the bed and called 911. On cross-examination, he clarified that the incident he described occurred a long time before Stallings's children stayed with him at the motel. When asked about the August 2013 incident with the Seattle Police, Nance testified that an ex-girlfriend, not Smith, assaulted him but the police misunderstood his report and refused to help him. He claimed that his cousin was caring for S.N. at the time and he went to the precinct to turn himself in on a warrant.

When asked whether he left the children alone in motel rooms, Nance said, "I usually wouldn't." VRP (2/26/14) at 217. He explained that his cousin's mother and Smith's cousin were also staying in the same motel and would watch the children either

4

in his room, or while smoking outside the door, or in their own rooms. He acknowledged that he had once returned from the store across the street to find the motel manager at his door and the manager called 911. Nance also admitted that L.M. was seen carrying S.N. and knocking on motel room doors, but claimed that L.M. was just knocking on "his auntie's door that was next door" to look for S.N.'s pacifier. VRP (2/26/14) at 246.

After the hearing, the court concluded S.N. and L.M. were dependent under RCW 13.34.030(6)(b) and (c).[1] Nance appeals only the dependency order as to S.N.

## ANALYSIS

Nance argues he received ineffective assistance of counsel when his attorney failed to object to Blackwell's inadmissible hearsay testimony.

In Washington, a parent has a statutory right to counsel at all stages of a dependency proceeding. In re Dependency of Grove, 127 Wn.2d 221, 226, 897 P.2d 1252 (1995); RCW 13.34.090. "'[C]onsistent with the constitutional requirements of fairness, equal protection, and due process, . . .'" this right includes the right to effective assistance of counsel. In re Grove, 127 Wn.2d at 232; see also RCW 10.101.005.

To prevail on his claim of ineffective assistance of counsel, Nance must show that counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances, and that the deficient performance caused prejudice. In re Dependency of S.M.H., 128 Wn. App. 45, 61, 115 P.3d 990 (2005);

---

[1] The statute provides that a dependent child is one who:

...

(b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child; or

(c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development....

Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, Nance must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. If one of the two prongs is absent, we need not inquire further. Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Nance claims he was prejudiced by his counsel's failure to object to Blackwell's hearsay testimony because the trial court relied on that testimony as substantive evidence that "formed the lion's share of the evidence supporting a neglect finding, at least as to" him. Brief of Appellant at 20. Relying on findings of fact 2 and 3, Nance argues the court "did not appear [to] limit the admission" of Blackwell's testimony "to the basis for any social worker's opinion," but instead "considered the statements as substantive evidence that Nance left S.N. alone." Brief of Appellant at 19.

We disagree with Nance's characterization of the findings. Finding 2 accurately describes Blackwell's testimony. Although Nance assigns error to the finding, he does not claim the finding is not supported by the evidence presented at the hearing. See In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) (proper challenge to findings of fact requires argument as to "why specific findings of the trial court are not supported by the evidence" and citation "to the record to support that argument.").

Finding 3 provides:

Heidi Stull was the CPS investigating social worker who was assigned to investigate the referral as it relates to [S.N.] and [L.M]. She contacted the family in June 2013 at the Jet Inn Motel after learning from the manager of the motel that the children were being left unsupervised in the hotel room. The manager said he had had to

6

> move the family to a different room because of noise complaints. The CPS investigator smelled marijuana as she stood in the doorway of the motel room, but Dexter Nance Sr. claimed that it was from the people upstairs. He acknowledged that [S.N.] had fallen, but he claimed the parents were present, and medics checked her to make sure she was okay. He also acknowledged that he left the children to go to the store, but asked his 'cousin' next door to watch the children. The one incident of the child falling off the bed alone would not be a problem, but there were multiple reports of these children being left alone or with supervision by someone in the vicinity.

Clerk's Papers (CP) at 196]

Although Nance claims that the last sentence indicates an improper consideration of Blackwell's testimony, he does not argue that this sentence or any other portion of finding 3 is not supported by the evidence or cite to the record to support such an argument. Indeed, even aside from Blackwell's testimony regarding Stallings's report, other evidence in the record supports the finding that "there were multiple reports" that Nance left "these children" "alone or with supervision by someone in the vicinity." CP at 196. In particular, Nance himself admitted that (1) he once returned from the store to find the motel manager calling 911 to report that the children were alone in the motel room; (2) the manager reported the "kids throwing rocks in the parking lot;" VRP (2/26/14) at 245; and (3) the manager reported that L.M. had been carrying S.N. and knocking on other motel room doors. Based on this record, we reject Nance's challenge to findings 2 and 3.

We also disagree with Nance's claim that the court would have made a different determination as to RCW 13.34.030(6)(b) and/or (c) if counsel had successfully objected to Blackwell's hearsay testimony. Nance not only admitted that he would leave the children in the room with no supervision except a purported relative outside the door smoking, he also admitted that the children were actually alone in the motel at least

7

twice as reported by the manager, once in their room and once out in the hall knocking on other doors. Nance also admitted that S.N. was with him during his confrontation with Seattle Police, who described Nance as intoxicated. Although Nance minimized each of these incidents, the court found that his "testimony was not internally consistent" and not credible. CP at 198. Credibility determinations in a dependency trial are for the trial court to resolve and will not be disturbed on appeal. In the Dependency of M.P., 76 Wn. App. 87, 91, 882 P.2d 1180 (1994).

Nance also admitted that he was homeless, unemployed, and had struggled with alcohol abuse. He also testified to visiting S.N. at most five times between September 2013 and February 2014. And DSHS presented evidence of Nance's criminal history, including a significant number of convictions related to domestic violence, and his failure to avail himself of offered services. Because Nance fails to argue or establish that this evidence is insufficient to support the court's findings under RCW 13.34.030(6)(b) and/or (c), he fails to demonstrate prejudice resulting from counsel's alleged deficient performance. Thus, his ineffective assistance claim fails.

Affirmed.

_Spearman C.J._

WE CONCUR:

8