## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76339-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL WAINAINA KARIUKI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 30, 2018 |
| | ) | |

ANDRUS, J. — Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the offense proved beyond a reasonable doubt. Michael Wainaina Kariuki challenges the sufficiency of the evidence supporting his conviction for second degree assault by strangulation. But, viewing the evidence in the light most favorable to the State, a rational juror could have found beyond a reasonable doubt that Kariuki assaulted his victim by strangulation. We affirm.

## FACTS

S.R., a 13 year-old girl living with her sister, Brittcole Trent, was in a sexual relationship with Kariuki, a 21 year-old neighbor. On May 11, 2015, S.R. and her friend Tabitha Chamberlain visited Kariuki. When S.R. returned home, she was distraught. She smelled of alcohol and her cheek was red and swollen. S.R. told Trent that Kariuki wanted to have sex with her in front of Chamberlain and, when she said no, he slapped her.

S.R., Trent, and other family members went to Kariuki's apartment and demanded to know what had happened. Kariuki denied slapping S.R. Kariuki's stepfather told Trent to leave and pushed her. Before Trent could restrain her, S.R. ran at Kariuki and began hitting him. Kariuki's stepfather called the police and reported an assault.

When police officers responded, Kariuki was limping. He told the officers that S.R. had assaulted him and injured his leg. Kariuki declined to give details about what occurred and later stated that he injured his leg when he tripped over a table.

After speaking with Kariuki and his stepfather, the officers went to S.R.'s apartment, where they spoke with S.R., Chamberlain, and Trent on the steps outside. S.R. was uncooperative. Officer Blackshear observed that her cheek and eyelid were swollen. S.R. and Chamberlain spoke with the officers briefly then went into the apartment. The officers remained outside speaking with Trent. After some time, Chamberlain rushed out of the apartment yelling that S.R. had knives and was about to kill herself. The police officers and Trent ran inside and found S.R. in a bathroom. Trent was able to take the knives away from S.R. The officers took S.R. into custody to prevent her from harming herself. They called for an ambulance to transport her to the hospital for evaluation by a mental health professional.

While waiting for the ambulance, Officer Blackshear placed S.R. in the back of the patrol car. He observed that she smelled of alcohol and appeared intoxicated. He also observed bruises on S.R.'s neck. Blackshear photographed the bruises and instructed the medics to evaluate S.R. for strangulation.

No. 76339-3-I/3

Following an investigation, the State charged Kariuki with two counts of rape of a child in the second degree, assault in the second degree by strangulation, sexual exploitation of a minor, communication with a minor for immoral purposes, and child molestation in the second degree. During a three-week trial, Trent, Chamberlain, and the responding officers testified to the events related above. Professionals who cared for S.R. at the hospital also testified.

A social worker, Janelle Heath, stated that S.R. told her that she had been sexually active with Kariuki on multiple occasions. S.R. told Heath that, on May 11, she and Kariuki had several drinks. Kariuki then wanted to have sex but S.R. said no. S.R. told Heath that Kariuki slapped her, choked her, and pushed her into a dresser. The emergency room physician, Dan Himelic, testified that he observed bruising on the front of S.R.'s neck. S.R. told Himelic that her "significant other" attacked her and choked her. The nurse who conducted the sexual assault exam, Courtney Walker, testified that she observed a bruise on S.R.'s neck near her trachea, as well as other scratches and bruises. Walker stated that bruising is one sign of strangulation.

S.R. did not testify. According to Trent, S.R. was in love with Kariuki and did not testify because she did not want to get him in trouble.

The jury convicted Kariuki of one count of rape of a child and assault in the second degree by strangulation.[1]

---

[1] The jury acquitted Kariuki on the second count of rape of a child and the child molestation charge. The jury was unable to reach a verdict on the remaining charges and a mistrial was declared as to those charges.

- 3 -

## ANALYSIS

Kariuki challenges the sufficiency of the evidence supporting his conviction for second degree assault by strangulation. Sufficiency of the evidence is a question of law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The test is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Id.

To convict of assault by strangulation, the State must prove that the defendant compressed the victim's neck and thereby either (1) obstructed the person's blood flow or ability to breathe or (2) intended to obstruct the person's blood flow or ability to breathe. RCW 9A.36.021(1)(g); RCW 9A.04.110(26). Kariuki argues that the evidence at trial was insufficient for a reasonable person to conclude that he obstructed S.R.'s blood flow or her ability to breathe or acted with the specific intent to cause that result.

We disagree. Officer Blackshear saw bruising on S.R.'s neck. He documented her bruises by photographing them. These photos were admitted at trial. Blackshear described what he'd seen as a "long red mark" in the center of her throat. He also testified he found vomit in the backseat of his patrol car after transporting S.R. to the hospital. Medical personnel testified that vomit is a symptom of strangulation. The nurse who attended to S.R. testified that she saw and photographed a 1.5 cm by 1 cm bruise on the anterior medial portion of S.R.'s

neck, near her trachea. The social worker and the emergency room doctor both testified that S.R. reported she had been choked.

Proof of intent can be made through circumstantial evidence. State v. Hagler, 74 Wn. App. 232, 236, 872 P.2d 85 (1994). Intent to commit a crime may be inferred from a defendant's conduct where it is plainly indicated as a matter of logical probability. In re Personal Restraint Petition of Fuamaila, 131 Wn. App. 908, 923 n.23, 924, 131 P.3d 218 (2006) (evidence of intent to murder inferred from victim's multiple stab wounds) (quoting State v. Myers, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997)). Evidence of intent is gathered from all of the circumstances of the case. State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). Based on all of the evidence presented to the jury in this case, it could reasonably conclude that the injury on S.R.'s trachea—caused by a force strong enough to cause bruising—was indicative of an intent to obstruct S.R.'s ability to breathe. The jury could reasonably infer that Kariuki injured S.R. with the intent to obstruct S.R.'s breathing.

Kariuki also challenges the admission of S.R.'s hearsay statements to Heath, the social worker. He objects to Heath's testimony that S.R. told her that Kariuki slapped her, choked her, and pushed her into a dresser. Kariuki contends this statement was not within the medical hearsay exception because it attributed fault.

We review the trial court's decision to admit a statement under a hearsay exception for abuse of discretion. State v. Magers, 164 Wn.2d 174, 187, 189 P.3d 126 (2008). The trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons. Id. at 181.

Statements made for the purpose of medical diagnosis or treatment are admissible as medical hearsay. ER 803(a)(4). Because they are not reasonably pertinent to diagnosis or treatment, statements attributing fault are not generally within this exception. State v. Redmond, 150 Wn.2d 489, 496-97, 78 P.3d 1001 (2003). But the admissibility of a statement as medical hearsay depends on the specific context in which the statement was made. In re Dependency of Penelope B., 104 Wn.2d 643, 656, 709 P.2d 1185 (1985). We have recognized attributions of fault as medical hearsay in cases of child abuse and domestic violence. State v. Sims, 77 Wn. App. 236, 239, 890 P.2d 521 (1995). In such cases, statements attributing fault are pertinent to the treatment of the victim's psychological and emotional injuries, which may include recommendations on how to prevent a recurrence of abuse. Id. at 239-40. See also State v. Butler, 53 Wn. App. 214, 222, 766 P.2d 505 (1989).

In this case, the trial court heard argument concerning S.R.'s hearsay statements in pretrial motions. The court considered the specific facts of this case, particularly the romantic relationship between Kariuki and S.R.; their ages; the proximity of their homes; and the fact that the alleged violence caused psychological harm that led S.R. to attempt suicide. Given these facts, the court ruled that S.R.'s statements attributing fault to Kariuki were reasonably pertinent to medical diagnosis and treatment.

The trial court did not abuse its discretion. The court properly considered S.R.'s statements in the specific context of this case. The decision is based on proper grounds and is not manifestly unreasonable.

Furthermore, even if the trial court erred, the error was harmless. An erroneous decision to admit evidence is grounds for reversal only if, within reasonable probabilities, the error materially affected the outcome of the trial. State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). In this case, Trent and Chamberlain testified that S.R. was in a relationship with Kariuki, visited him on May 11, and was distraught after the visit. The doctor, nurse, and responding officer each testified that they saw bruises on S.R.'s neck. Photographs of the bruises were admitted into evidence. The doctor testified that S.R. told him that her boyfriend choked and attacked her. The nurse testified that bruising is one sign of strangulation. Given this unchallenged evidence, it is not reasonably probable that the outcome of the trial would have been different if S.R.'s hearsay statement to the social worker had not been admitted.

Affirmed.

WE CONCUR: