# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                                 )
           Respondent, )
                                 )
          v. )
                                 )
JAMES MATTHEW FEY, )
                                 )
          Appellant. )
_____ )

No. 70443-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 3, 2014

APPELWICK, J. — Fey was convicted of child molestation in the first degree after his stepdaughter, K.R., reported that Fey molested her. Fey argues that the trial court erred in admitting statements K.R. made to her therapist under ER 803(a)(4). He asserts that this error combined with several other evidentiary rulings deprived him of his right to a fair trial. He alleges that he received ineffective assistance of counsel when his attorney stipulated to the admission of K.R.'s recorded interview with a child forensic interview specialist. He contends that his sentencing conditions deprived him of his parental right to a relationship with his own children. We affirm.

## FACTS

K.R. lived with her mother, C.R., stepfather, James Fey, older sister, A.R., and younger twin sisters, H.F. and E.F. At the time of trial, K.R. was 11 years old, and C.R. and Fey had been together for nine years. C.R. and Fey are H.F.'s and E.F.'s biological parents. K.R. and A.R. have a different biological father but were raised by Fey since they were young. They call him "dad."

On May 29, 2012, an educational theater group performed a play at K.R.'s school. The play was about safety rules in situations of bullying or abuse. In one of the acts, a 12 year old character was inappropriately touched by her mother's boyfriend. After

watching the play, K.R. asked one of the actresses, "What if it's a parent touching you? What if it's your dad? That's happening to me. I should tell." The actress informed a school counselor who spoke to K.R. K.R. told the counselor that her stepfather touched her inappropriately. The counselor contacted the police.

K.R. was taken to the hospital for a sexual assault examination. Her examination was inconclusive.

K.R. was then interviewed by a forensic child interview specialist, Gina Coslett. The interview was videotaped. During the interview, K.R. told Coslett that the first time Fey touched her was in July 2011. Fey and K.R. were in Fey's living room—called the "man cave"—and Fey was tickling K.R. K.R. said he "put his fingers over the pants and started just feeling it." K.R. said, "Stop," and Fey did.

K.R. told Coslett that Fey touched her another time when they were watching a movie together. Fey lifted K.R. up beside him and starting touching her vagina. She said it felt "very, very uncomfortable." K.R. said she told him to stop, but she did not think she said it loud enough, because he kept touching her. Fey stopped when K.R. "almost screamed 'Stop.'" K.R. said that Fey also put K.R.'s hand on "his nuts" that night.

K.R. told Coslett that the last time Fey touched her inappropriately was also when they were watching a movie together in the man cave. K.R. said that Fey reached down her shorts and rubbed her vagina with his fingers. He stopped when K.R. said, "Ow."

After the allegations, K.R. was placed with in a foster home with Kim Miller. K.R. remained with Miller throughout the trial court proceedings. The State initiated a dependency case against Fey and C.R. As part of the dependency proceeding, K.R.

attended weekly counseling with Jo Jordan, a psychotherapist.[1]  Jordan diagnosed K.R. with posttraumatic stress disorder (PTSD).

The State charged Fey with one count of child molestation in the first degree.  Fey pleaded not guilty.  His defense was that K.R. lied for attention when she accused Fey of molesting her and that she incorporated details from the educational play into her accusations and interview with Coslett.  Fey's counsel stipulated to the admission of the interview video recording.

K.R. testified at trial.  She said that Fey touched her vagina multiple times.  K.R. testified that she best remembered the second time that Fey touched her.  She said that they were watching a movie in the man cave when it happened.  She also testified that Fey made her touch "his nuts."  She did not remember many other details.

The State called Coslett, who testified about the forensic interview process.  The State played the videotape of K.R.'s interview for the jury, per Fey's stipulation.

Jordan testified about K.R.'s counseling sessions.  She said that K.R. told her that Fey molested her when they watched a movie together under a blanket in the man cave.  K.R. said that Fey "tickled her up and down her sides and then down the front, and then he touched her on her front privates."

Fey testified.  He stated that he never molested K.R. or touched her inappropriately.

The jury found Fey guilty as charged.  He was sentenced to 59.5 months to life in prison.  He appeals.

---

[1] The record does not otherwise reflect the terms of K.R.'s counseling.

3

DISCUSSION

Fey argues that multiple erroneous evidentiary rulings amounted to cumulative error which deprived him of his right to a fair trial. He further maintains that he received ineffective assistance of counsel when his attorney stipulated to the admission of K.R.'s videotaped forensic interview. Finally, he argues that his sentencing conditions impede his parental relationship with his biological daughters.

## I. Evidentiary Rulings

We review a trial court's evidentiary rulings for abuse of discretion. Cox v. Spangler, 141 Wn.2d 431, 439, 5 P.3d 1265, 22 P.3d 791 (2000). We will not overturn the trial court's ruling absent manifest abuse of discretion. Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997). The accumulation of otherwise nonreversible errors may deny the defendant a fair trial. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984).

### A. K.R.'s Statements to Her Therapist

Fey argues that the trial court erred in admitting statements K.R. made to Jordan during counseling, because the statements were inadmissible hearsay.[2] Fey asserts that K.R. did not make her statements for the purpose of treatment and thus the statements lack the guarantee of trustworthiness required by ER 803(a)(4).

ER 803(a)(4) establishes the medical diagnosis exception to the rule against hearsay. Under this exception, out-of-court statements are admissible if made for the

---

[2] The State contends that Fey waived his objection to K.R.'s statements. But, Fey objected to their admission during motions in limine. His objection was ongoing. State v. Kelly, 102 Wn.2d 188, 193, 685 P.2d 564 (1984) ("Unless the trial court indicates further objections are required when making its ruling, its decision is final, and the party losing the motion in limine has a standing objection."). Fey's objection is preserved for appeal.

purpose of medical diagnosis or treatment. Id. The rationale is that a medical patient is presumed to have a strong motive to be truthful and accurate, providing a "significant guarantee of trustworthiness." State v. Perez, 137 Wn. App. 97, 106, 151 P.3d 249 (2007). For the purposes of ER 803(a)(4), the term "medical" applies to both physical and mental health, including therapy for sexual abuse.[3] In re Pers. Restraint of Grasso, 151 Wn.2d 1, 19, 84 P.3d 859 (2004); State v. Woods, 143 Wn.2d 561, 602-03, 23 P.3d 1046 (2001); In re Dependency of M.P., 76 Wn. App. 87, 92-93, 882 P.2d 1180 (1994).

The medical diagnosis exception becomes more complicated in the context of child declarants. We do not presume that children cannot understand that certain statements they make are for the purpose of treatment. M.P., 76 Wn. App. at 93. Nor is there a per se requirement that a child declarant affirmatively understand a statement's treatment purpose, so long as the statement has other indicia of reliability. State v. Ashcroft, 71 Wn. App. 444, 457, 859 P.2d 60 (1993). For example, the court may admit statements made by child declarants who cannot understand the treatment purpose of their statements if corroborating evidence supports the child's statements and it appears unlikely that the child would have fabricated the cause of injury. State v. Florczak, 76 Wn. App. 55, 58-59, 65, 882 P.2d 199 (1994). Subsequent cases have clarified that the rule in Florczak applies to only very young children.[4] See State v. Kilgore, 107 Wn. App. 160, 183, 26 P.3d 308 (2001), aff'd, 147 Wn.2d 288, 41 P.3d 974 (2002); State v. Carol M.D.,

---

[3] Fey asserts that statements to a mental health therapist should not be treated as statements to a medical doctor under ER 803(a)(4). Washington courts have declined to make this distinction. See, e.g., M.P., 76 Wn. App. at 92-93 ("We cannot conclude that therapy for sexual abuse, as an exercise in healing, differs materially from other medical treatment for the purposes of ER 803(a)(4).").

[4] The child declarant in Florczak was three years old. 76 Wn. App. at 58.

89 Wn. App. 77, 87-88, 948 P.2d 837 (1997), withdrawn in part on other grounds, 97 Wn. App. 355 983 P.2d 1165 (1999).

In Carol M.D., the court found that nine year old M.D. was old enough to be capable of understanding that her statements were made for the purpose of treatment. 89 Wn. App. at 87-88. However, on the record before it, the court did not find that M.D. was motivated to tell the truth by her self-interest in obtaining proper medical treatment. Id. at 87. M.D. testified that Cindy Andrews was her therapist, but also said she did not know what Andrews was supposed to do. Id. at 86. Andrews testified that her standard practice was to tell children who she is and what she does. Id. at 87. But, she did not testify that she explained to M.D. that her treatment's success depended upon truthful and accurate information. Id. The court held that, where a child declarant has not sought medical treatment, but makes statements to a state-appointed counselor, the "record must affirmatively demonstrate the child made the statements understanding that they would further the diagnosis and possible treatment of the child's conditions." Id. at 86.

The Kilgore court narrowed the rule in Carol M.D.:

When the party is offering hearsay testimony through the medical diagnosis exception, when the declarant has stated he or she does not know what the medical personnel to whom the statement was made does . . . the party offering the statement must affirmatively establish the declarant had a treatment motive. Otherwise, as long as the declarant is not a very young child, courts may infer the declarant had such a motive.[5]

107 Wn. App. at 184 (emphasis added).

When K.R. began therapy, Jordan explained her role as a psychotherapist. She told K.R. that "it was a safe place, and let her know the kind of work I do, and that a lot of

---

[5] In Kilgore, the child declarant was almost 11 years old. 107 Wn. App. at 183. The court presumed that she had a treatment motive. Id.

kids feel the way that she feels and a lot of kids have had the experience that she described. And I let her know that when she was ready to talk that I would be there for her." Jordan also told K.R. that their conversations were confidential, as long as no one was getting hurt. Their sessions consisted of therapeutic activities, such as games to help K.R. be more comfortable facing her issues and feelings. K.R. testified that she went to counseling with Jordan once a week, starting shortly after K.R. went to live with her foster mother. K.R.'s therapy began in June 2012 and continued through trial in March 2013. K.R. said that she and Jordan would talk and play "feeling games."

Unlike the declarant in Carol M.D., K.R. did not state that she did not know what Jordan does. To the contrary, K.R. testified that Jordan was her counselor and spoke about therapeutic activities they did together, indicating that she understood Jordan's work. Thus, under the limiting principle set forth in Kilgore, we may infer that 11 year old K.R. had a treatment motive when making her statements. See 107 Wn. App. at 183-84 (presuming 10 year old had treatment motive).

Fey seeks to rebut this inference, arguing that the record shows that K.R. did not make her statements for the purpose of treatment. First, he asserts that K.R.'s incentive to be truthful was reduced, because she "did not seek treatment from Ms. Jordan and did not like going." According to Jordan, K.R. was negative and anxious in the beginning of counseling. However, Jordan also testified that K.R. became more relaxed and willing to share as time went on. And, K.R. testified that counseling was "going okay. I like Jo because, like, she -- she's not afraid to express herself." The record does not support Fey's assertion that K.R.'s feelings towards therapy affected her truthfulness.

Fey further contends that K.R. did not make her statements for the purpose of treatment, because she believed the reason she went to therapy was to prepare her for court. Specifically, he refers to K.R.'s testimony that she and Jordan talked about what happened with Fey "[o]nly when I had to -- we had to talk about it for court to get me ready." When the prosecutor asked K.R. to explain, she replied,

> Like, she has to go, like, tell me, like, what's going to happen, and, like -- like, when every -- everybody's going to be there, like, who's going to be there, and she was going to be here but I don't think she could make it. And she -- and we just go over what we were going to --what I was going to say and everything, and, like, talk about the only truth thing, and we talked about how I felt about it.

Fey's argument ignores an important piece of context. Jordan diagnosed K.R. with PTSD. Jordan's job was to help K.R. deal with and heal from her trauma. K.R. had difficulty talking about what happened to her. As trial approached,[6] Jordan had every reason to be concerned about how testifying would affect K.R. It follows that Jordan would want as part of K.R.'s treatment to prepare K.R. for a potentially difficult experience. K.R. did not say that her only reason for seeing Jordan was to prepare for trial. She did not say Jordan coached her on what to say at trial. Jordan testified that K.R.'s counseling sessions were not for the purpose of preparing her for trial. The record shows that Jordan built a trusting, therapeutic relationship with K.R. over several months. There is no evidence to suggest that this relationship changed when discussing trial preparation. And, preparing K.R. for trial was consistent with her treatment.

Moreover, Jordan emphasized the need for candor when she talked with K.R. about trial. K.R. testified that Jordan told her "it's, basically, like, the truth chair. Don't tell

---

[6] Jordan testified that she and K.R. spoke about Fey in January 2013. Trial began in March 2013.

a lie, and, like -- like, for us, the truth thing is when I, like, tell -- actually tell my feelings about how I feel about court and everything." Thus, to the extent that K.R.'s statements to Jordan related to trial preparation, K.R. was aware that it was essential to speak the truth.

Fey does not overcome the presumption that K.R.'s statements were for the purpose of treatment. The trial court did not abuse its discretion in admitting her statements.

### B. K.R.'s Testimony About Her Out-of-Home Placement

Fey argues that the trial court admitted irrelevant and unduly prejudicial testimony about K.R.'s foster placement. "Relevant evidence" is evidence having any tendency to prove or disprove a fact that is material to the determination of the action. ER 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. The trial court has wide discretion in balancing the probative value of evidence against its potential prejudicial impact. Coe, 101 Wn.2d at 782.

The trial court admitted the State's evidence about K.R.'s foster placement on the condition that the State use the less prejudicial term "out-of-home placement" in lieu of "foster care." Fey argues that K.R.'s testimony about her out-of-home placement was not relevant to her credibility, because she was placed there after she made her allegations. But, K.R. testified that she was initially scared at the new home and missed her family. The State's theory was that, under those circumstances, K.R. would have recanted if she was lying. K.R.'s commitment to her allegations in the face of discomfort and loneliness

9

was probative of her credibility, especially in a case where her credibility was the central issue.

Neither the prosecutor nor K.R. suggested that the State arranged K.R.'s out-of-home placement. But, Fey contends that the testimony prejudiced him by allowing the jury to infer that the State removed K.R. from her home and by engendering sympathy for K.R., bolstering her credibility. "Almost all evidence is prejudicial in the sense that it is used to convince the trier of fact to reach one decision rather than another." State v. Rice, 48 Wn. App. 7, 13, 737 P.2d 726 (1987). The trial court weighed the potential for prejudice from such an inference and the probative value relative to K.R.'s credibility and concluded that the evidence was admissible. This was not an abuse of discretion.

Moreover, the court instructed the jury that the evidence may be considered only for the limited purpose of assessing K.R.'s credibility. We presume that juries follow all instructions given. State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001). Fey did not object to the instruction below. He waived his objection to the instruction on appeal. RAP 2.5(a); State v. Smith, 174 Wn. App. 359, 364, 298 P.3d 785 (2013) ("Generally, a party who fails to object to jury instructions in the trial court waives a claim of error on appeal."), review denied, 178 Wn.2d 1008, 308 P.3d 643 (2013).

C. Fact of Complaint Evidence

Fey asserts that the trial court erred in permitting "fact of complaint" witnesses to testify that K.R. identified Fey as her molester. The fact of complaint doctrine is an exception to the rule against hearsay. State v. Ackerman, 90 Wn. App. 477, 481, 953 P.2d 816 (1998). It allows the State in a sex offense case to present evidence that the victim complained to someone after the assault. State v. Ferguson, 100 Wn.2d 131, 135,

667 P.2d 68 (1983). This rule admits only evidence establishing that the complaint was timely made. Id. at 135-36. A fact of complaint witness may not testify about the identity of the offender. Id. at 136. However, error in admitting evidence about the offender's identity may be harmless where identity is not contested. See, e.g., State v. Fleming, 27 Wn. App. 952, 957-58, 621 P.2d 779 (1980).

At trial, the State elicited fact of complaint testimony from two counselors at K.R.'s school. Both testified that K.R. said her father molested her. The trial court overruled Fey's objection to this testimony. This was error. However, the identity of K.R.'s molester was not in question. And, several other pieces of evidence identified Fey as the perpetrator. Thus, the error was harmless.

Fey also argues that the State used the fact of complaint evidence in closing argument to impermissibly bolster K.R.'s credibility. But, the State did not refer to the fact of complaint witnesses in closing. When the State argued that K.R.'s testimony was corroborated by other witnesses, it named Fey—not the fact of complaint witnesses—as an example and discussed how Fey's testimony was similar to K.R.'s regarding the details of the incident.

Any error in admitting the fact of complaint evidence was harmless.

D. Therapist's Testimony About K.R.'s Memory Problems

Fey contends that Jordan improperly testified to K.R.'s credibility "[u]nder the guise of medical testimony" about K.R.'s memory loss due to her medical condition.[7] Expert testimony is admissible when (1) the witness qualifies as an expert, (2) the opinion is

---

[7] The court barred the State from referring to K.R.'s PTSD by name due to its potential for prejudice. Instead, the State referred to K.R.'s PSTD as her "medical condition."

based upon an explanatory theory generally recognized in the scientific community, and (3) if it will be helpful to the trier of fact. ER 702; In re Pers. Restraint of Morris, 176 Wn.2d 157, 168-69, 288 P.3d 1140 (2012). An expert's opinion is not automatically excluded if it covers an issue to be decided by the trier of fact. ER 704; State v. Kirkman, 159 Wn.2d 918, 929, 155 P.3d 125 (2007). However, no witness may comment on the credibility of another witness. State v. Carlson, 80 Wn. App. 116, 123, 906 P.2d 999 (1995).

In Kirkman, the defendant was accused of sexually assaulting a child. 159 Wn.2d at 924. The doctor who examined the victim testified that there was no physical evidence of sexual contact. Id. The State asked the doctor if his findings were consistent with the victim's allegations of abuse. Id. The doctor replied that "'to have no findings after receiving a history like [the victim reported] is actually the norm rather than the exception.'" Id. The Washington Supreme Court found this testimony proper. Id. at 933. It noted that, where a child victim's credibility is at issue, a trial court has broad discretion to admit evidence corroborating the child's testimony. Id. There, the doctor did not opine that the defendant was guilty or that the victim was truthful. Id. Rather, his testimony was "content neutral" and did not comment on the substance of the matters they discussed. Id.

Here, the State asked K.R.'s therapist whether K.R.'s medical condition affects her memory. Jordan testified that "[o]ften times this condition affects the memory in ways that they forget critical parts of what happened to them. Sometimes they -- sometimes it's time that they get wrong, and they might take several instances and put it into one. Sometimes they forget details." She also testified that stress can exacerbate K.R.'s condition.

This is analogous to <u>Kirkman</u>. Fey's defense relied on challenging K.R.'s credibility. Jordan did not opine on K.R.'s truthfulness. Like the doctor in <u>Kirkman</u>, Jordan merely explained why inconsistencies in K.R.'s testimony might occur. And, the line of questioning here was less blatant than in <u>Kirkman</u>, where the State directly asked the doctor if the inconsistency could be reconciled. <u>See</u> 159 Wn.2d at 924.

The trial court did not abuse its discretion in admitting Jordan's testimony about K.R.'s memory loss.

E. <u>Questions About Fey and C.R.'s Bad Parenting</u>

Fey argues that the trial court erred in admitting evidence that suggested Fey and C.R. were bad parents.

He first challenges evidence that he permitted his daughters to watch an inappropriate movie called <u>Sucker Punch</u>. (Warner Brothers 2011). During A.R.'s cross-examination, the State asked her, "So let's talk about Sucker Punch. . . . Do you think that's an appropriate movie for [K.R.] to be watching?" A.R. replied that the movie was "[p]robably not entirely appropriate, but it's not extremely inappropriate." The State argues that this was relevant to whether Fey molested K.R., because "[a]llowing a child to watch movies with sexual themes could desensitize the child to sexual situations." But, A.R.'s testimony does not specify that the movie was sexual or otherwise suggest that Fey molested K.R. A.R.'s opinion about <u>Sucker Punch</u>'s appropriateness has questionable relevance. However, Fey testified—without objection—that certain parts of the movie were inappropriate and would "get kind of sexual." Fey does not demonstrate prejudice from A.R.'s testimony.

Fey's remaining challenges are without merit. He complains that the prosecutor repeatedly questioned him about why he did not tell detectives about watching <u>Sucker Punch</u> with K.R. But, the court sustained both of Fey's objections to this line of questioning. In addition, Fey seems to object to the State addressing this evidence in closing. However, the attorneys' statements are not evidence, and the jury was instructed as such. Finally, Fey challenges the line of questioning by the prosecutor which attacked C.R.'s parenting. The prosecutor asked multiple questions about C.R.'s comment that "'four innocent people' were suffering" due to K.R.'s accusations.[8] Fey objected at trial. Fey now argues that these tactics placed irrelevant and unduly prejudicial evidence before the jury. But, the underlying evidence that people were suffering was introduced during testimony by Jordan without objection. We will not find error based on an evidentiary grounds not raised at trial. <u>State v. Powell</u>, 166 Wn.2d 73, 82-83, 206 P.3d 321 (2009).

To the extent the trial court erred in admitting irrelevant evidence, it was harmless.

F. Cumulative Error

Fey argues that the aforementioned evidentiary errors amounted to cumulative error, prejudicing his right to a fair trial. We find that the trial court made two harmless errors. This did not constitute cumulative error.

II. Ineffective Assistance of Counsel

Fey argues that his counsel was ineffective for stipulating to the admission of K.R.'s recorded interview with Coslett. He maintains that the interview consisted of

---

[8] Fey's argument on appeal seems to challenge the prosecutor's behavior. However, he frames his argument as an evidentiary challenge and does not allege prosecutorial misconduct. Accordingly, we treat the challenge as evidentiary.

otherwise inadmissible hearsay that prejudiced the jury's verdict. He contends that there was no conceivable legitimate tactical reason for counsel's actions.

The Sixth Amendment of the United States Constitution guarantees defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate ineffective assistance of counsel, an appellant must show that the attorney's performance was deficient and that the deficiency was prejudicial. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance is that which falls below an objective standard of reasonableness. In re Det. of Moore, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009). The reasonableness of counsel's conduct is judged "on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Prejudice occurs if, but for the deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption of effective assistance. Moore, 167 Wn.2d at 122. But, this court will conclude that counsel's representation is ineffective if it can find no legitimate strategic or tactical reason for a particular decision. McFarland, 127 Wn.2d at 336. For example, the decision to present certain evidence is a matter for difference of opinion and therefore presumed to be a matter of legitimate trial tactics. See In re Pers. Restraint of Davis, 152 Wn.2d 647, 742, 101 P.3d 1 (2004).

Defense counsel's theory of the case was that K.R. lied for attention when she accused Fey. Counsel theorized that K.R. incorporated details from the play in her interview with Coslett and that those details differed from K.R.'s testimony at trial eight

15

months later. Counsel used the video to note specific inconsistencies between K.R.'s interview and trial testimony. This allowed him to draw doubt about her credibility.

Fey argues that counsel could have impeached K.R. without stipulating to the admission of the entire interview. But, counsel also used the video to dispute the State's assertion that K.R. had memory issues. He referred to the video when questioning Coslett's interview techniques. And, he asked the jury to observe K.R. demeanor's during the interview.

Fey contends that the interview was prejudicial, because it presented evidence that did not arise elsewhere. But, counsel was clearly aware of this, as it was the basis for his argument that K.R.'s testimony was unreliable. Fey may disagree with counsel's strategy, but that does not make it illegitimate. See Davis, 152 Wn.2d at 742. Nor does the fact that Fey was ultimately convicted. See In re Pers. Restraint of Rice, 118 Wn.2d 876, 888-89, 828 P.2d 1086 (1992) (In considering ineffective assistance, "the court must make every effort to eliminate the distorting effects of hindsight.").

Fey's defense was that K.R. lied about his transgressions. The video was central to presenting his theory of the case. Counsel's stipulation to the video's admission was a legitimate tactical choice. It did not constitute ineffective assistance of counsel.

III. Sentencing Conditions

Fey challenges his sentencing conditions that restrict his contact with minors. He asserts that the conditions violate his fundamental right to a relationship with his biological daughters, H.F. and E.F.

The trial court has the authority to impose crime-related prohibitions as a condition of sentence. RCW 9.94A.505(8); State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940

16

(2008). We review sentencing conditions for abuse of discretion. Id. This remains the standard even where the condition interferes with a fundamental right, such as the relationship between parent and child. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010). However, we review such conditions more carefully to ensure that they are sensitively imposed and reasonably necessary to accomplish the essential needs of the State and public order. Id. at 374. The State has a compelling interest in preventing harm and protecting children. State v. Corbett, 158 Wn. App. 576, 598, 242 P.3d 52 (2010).

Fey's sentence included the following prohibitions:

4. Do not initiate or prolong contact with minor children without the presence of an adult who is knowledgeable of the offense and has been approved by the supervising Community Corrections Officer.

. . . .

6. Do not frequent areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer.

. . . .

8. Do not date women or form relationships with families who have minor children, as directed by the supervising Community Corrections Officer.

9. Do not remain overnight in a residence where minor children live or are spending the night.

Fey argues that these conditions bar him from communicating with his own family for as long as his children are minors.

We may vacate a no-contact order where it is not sufficiently related to the harm it seeks to prevent. See, e.g., State v. Letourneau, 100 Wn. App. 424, 427, 997 P.2d 436 (2000). In Letourneau, the defendant was convicted of second degree rape of a child. Id. The victim was a 13 year old boy to whom Letourneau was not related. Id. at 428-29.

As a condition of her sentence, Letourneau was prohibited from unsupervised contact with her biological children until they reached the age of majority. Id. at 437-38. Because there was no evidence that Letourneau might molest her own children, we found that the condition was not reasonably necessary to accomplish the State's needs. Id. at 441-42.

The present case is distinguishable. Although K.R. is not Fey's biological daughter, he essentially raised K.R. as his own. K.R. has called Fey "dad" for nine of her 11 years. Fey's conviction serves as evidence that Fey molested a child he considered his own. Unlike in Letourneau, it is reasonable to impose a condition to ensure that Fey's biological daughters are not at risk. And, Fey is able to see his daughters as long as an approved adult is present. The sentencing conditions are tailored to Fey's offense and reasonably necessary to prevent harm to minor children.

Relying on Rainey, Fey also challenges the lifetime duration of his conditions. In Rainey, the court entered a lifetime no-contact order between Rainey and his daughter after Rainey kidnapped the child and used her to gain leverage over his ex-wife. 168 Wn.2d at 379. The Washington Supreme Court approved the order's scope but found no justification on the record for the order's lifetime duration. Id. at 382. It remanded for the sentencing court to consider the duration of the order under the "reasonably necessary" standard. Id. at 382.

Again, the present case is distinguishable. Fey's conditions limit his interactions with minors for his lifetime. But, the conditions are not lifelong as they pertain to his children. Fey's contact with his daughters is restricted only until they reach the age of majority. This duration is justified by his offense.

The trial court did not abuse its discretion in imposing Fey's crime-related prohibitions.

We affirm.

_Appelwick, J._

WE CONCUR:

_Schindler, J._          _Cox, J._